WILLIAM G. PENN AND JOHN PENN *vs.* ROBERT ISHERWOOD.—*December*, 1847.

After a sale of land made by a sheriff, certified in his return to a writ of *vendi.* objected to in the county court upon a motion for a writ of *hab. fac. pos.* to put the purchaser into possession granted, and affirmed upon appeal, the legality of the sale in that cause is no longer an open question.

Since the act of 1831, ch. 141, after the term of office of the sheriff who made a sale under a *fi. fa.* or *vendi.* shall have terminated, the writ of *hab. fac. pos.* may be issued to any succeeding sheriff, coroner, or elisor, provided the other provisions of the law are complied with.

A *venditioni exponas* is ordinarily issued to the sheriff who levied the *fieri facias.* He has a qualified property by virtue of the levy.

Where a writ of *hab. fac. pos.* strictly pursues the return of the sheriff's levy and sale under a writ of *fi. fa.*, and the return to the writ of possession certifies the delivery of the land described in that process, it cannot be objected that the latter writ commands the delivery of more land than was sold.

A judge of this court, satisfied by the oath of a party entitled to a writ of possession, that the sheriff of the county could not with safety be trusted to execute such writ, may order the clerk to issue the writ to an elisor named and appointed by such judge.

The acts of 1794, ch. 54, sec. 5, and 1843, ch. 270, require applications for the appointment of elisors to be supported by proof which will satisfy the judge to whom application may be made, that the sheriff cannot be safely trusted with the execution of the writ; those acts did not design that any matter of right should be decided upon such application.

Language of a character similar to that in the acts of 1794, ch. 54, sec. 5, and 1843, ch. 271, sec. 1, is used in the act of 1773, ch. 7, sec. 7, in relation to the obtention of commissions to take proof, and from that period the construction of such words has been settled.

It is the practice in all the county courts of the State to order commissions to take proof to issue upon the affidavit of parties, where no other objection is made than the insufficiency of the affidavit of the party himself for such a purpose.

In support of motions to quash returns to writs of possession, and show that more land was delivered than authorized by the writ, the court will grant leave to take proof by affidavit on notice, and make surveys.

Appeal from *Montgomery* County Court.

On the 22d November, 1824, *John Brewer* sued out a writ of *fieri facias* directed to *Henry Harding*, sheriff of *Montgomery* county, upon the judgment rendered against the appellants and *Greenbury Penn*. That writ, on the 19th February, 1825, was levied upon,

"All the right, title, claim and interest, both at law and in equity, of, in and to the following tracts of land, viz:

"A tract of land called *The Addition to Ray's Adventure*, with all the improvements thereon, containing 100 acres more or less.

"A tract of land called *Owens' Resurvey*.

"A tract of land called *The Resurvey on Moore's Delight*."

On the back of the inventory and appraisement which showed the levy, the return of the sheriff being "laid as per schedule annexed," was the following endorsement: "Return amended 7th March, 1843. *H'y Harding*, late sheriff."

The schedules with this amended return showed a levy upon,

"All the right, title, interest and estate of *W. G. Penn*, both at law and in equity, of a tract of land called *Owens' Resurvey*, containing 99¼ acres more or less.

"A tract of land called *Owens' Resurvey*, and a tract called *The Resurvey on Moore's Delight*, containing 136¼ acres more or less."

*John Brewer* having died; on the 6th December, 1842, *Nicholas Brewer*, his administrator, sued out a writ of *vendi. exponas*, directed *Henry Harding, Esq.*, which recited a return of the said sheriff, that he had levied a *fieri facias* upon all

the right, title, &c. of *W. G. P.* to the following tracts of land, viz:

"A tract of land called the *Addition to Ray's Adventure*, containing 100 acres more or less.

"A tract called *Owens' Resurvey.*

"A tract called *The Resurvey on Moore's Delight*, formerly conveyed by *Charles Penn, Senior*, to *Charles Penn, Junior*, and *William Penn*, for 248½ acres more or less, which remain on hand for want of buyers, and commanding the said sheriff to sell the same," &c.

The sheriff's return at March term, 1843, to the writ of *vendi.* recited that he had levied the *fi. fa.* according to the recitals of the *vendi.* and certified a sale of the lands *as therein before set forth*, to *Robert Isherwood* for $1800, which sum the said *R. I.* had paid to him.

At March term, 1843, the defendants objected to the sheriff's sale and return:

1. Because an appeal from the judgment on which the execution issued was then depending.

2. The sheriff did not give due notice of the time, place, manner, cause and terms of sale mentioned in his return, by advertisement according to law.

3. Because the sale was not fair and valid.

4. Because the land was sold for a sum greatly less than its value, in consequence of the insufficiency of the advertisement.

These objections were overruled by the county court at November term, 1843; and on the 25th January, 1844, the purchaser, the appellee, filed in the office of the clerk of the county court, a demand of possession of the land according to the description in the *vendi. exponas*, supported by the affidavit of *W. G. Darby*, that the said *R. I.* had demanded the same of *W. G. Penn, Caleb R., John* and *Greenbury Penn*, that *William* and *Caleb* peremptorily refused to give possession, that the parties above named were then in possession.

The county court on motion, then ordered a rule to be laid on *W. G., Caleb R., John* and *Greenbury Penn*, to show cause in the first four days of March term, 1844, why a writ of *hab.*

*fac. pos.* should not issue to deliver the lands to *R. I.*, the purchaser, as set forth in the sheriff's return of sale to him, provided a copy be served, &c. at least twenty days before the first Monday of *March* aforesaid. The service of the rule was admitted.

*Caleb R. Penn* showed cause:

1. Because he was not a debtor or defendant in the cause in which the said rule was passed, and does not hold under the said debtor or defendants by title subsequent to the date of the judgment on which the *fi. fa.* issued.

2. Because the said *Caleb* has been in full and uninterrupted possession of the lands now held by him since the year 1812, and has had a full legal and equitable title since the 7th July, 1820.

3. Because *Isherwood* before his pretended purchase, had full notice of the possession and title of the said *Caleb*.

4. Because the affidavit of *Robert Isherwood* does not conform to the act of 1825, ch. 103, and the rule of court in relation to writs of *hab. fac. pos.*

In support of these reasons, the said *Caleb* exhibited a deed from *John Brewer*, trustee, to *Caleb R.* and *Ann Penn* for a *part* of a tract called *Owens' Resurvey*, and a *part* of a tract called *The Resurvey on Moore's Delight*, containing 68⅛ acres, and certificate by the sheriff of notice given before the sale, and to the bidders at the sale.

The other defendants showed cause against the rule:

1. That they have not had notice to deliver possession according to the act of Assembly.

2. That the interest of the parties in the land hath not been sold, and no return of the sale thereof hath been made.

3. That no affidavit of demand hath been made according to the act of Assembly.

4. That no demand of the lands hath been made according to the act of Assembly.

At November term, 1844, the county court ordered that the motion for the *habere facias* be overruled as to all the lands conveyed by *John Brewer* to *Caleb R. Penn* and wife, and that the writ issue for the residue of the lands sold as aforesaid.

From this judgment, *William G. Penn* and *John Penn*

appealed to this court, and the judgment of the county court was affirmed upon argument at June term, 1846, and execution awarded.

On the 3d August, 1846, *Robert Isherwood* presented a petition to the Honorable *T. B. Dorsey*, one of the judges of the Court of Appeals for the *Western Shore*, alleging that since the affirmance of the judgment aforesaid, a writ of *hab. fac. pos.* had been issued to *W. O. Chappell*, Esq., sheriff of *Montgomery* county, but the said sheriff having informed the said *R. I.* that he is interested in the property of the said *W. G. Penn*, referred to in said writ, and in possession thereof as his trustee, has returned said writ to the hands of your petitioner, to be delivered to the clerk of the Court of Appeals; and there being on the face of the said writ an informality, the petitioner countermanded the same; that he is credibly informed and verily believes there is *no coroner* in said county, and that the sheriff of the said county cannot safely be trusted with the execution of the said writ of *hab. fac. pos.* to be issued in said cause, and therefore prays an elisor may be appointed accordingly, &c.

To this petition was appended the affidavit of *Robert Isherwood*, before a justice of the peace of *Montgomery* county, "that the matters and things in the foregoing petition stated, of his own knowledge are true, and those stated on the knowledge and information of others he believes to be true; and further, that the said sheriff of *Montgomery* county cannot safely be trusted with the execution of the said writ of *hab. fac. pos.*"

On the 5th August, 1842, the Honorable *T. B. Dorsey* nominated and appointed *H. Harding*, Esq. of *Montgomery* county, an *elisor* to whom should be directed the writ of execution to be issued by the clerk of the Court of Appeals for the *Western Shore*, on the judgment, &c.

A writ was accordingly issued on the 7th August, 1846, and *H. Harding* declined to act; upon that fact appearing to the judge by the written declaration of *Mr. Harding* endorsed on the writ, on the 24th August, he certified to the clerk of the court, the appointment of *Joseph Snyder* as elisor, in the

place and stead of *H. Harding.* The writ was again issued, and *J. S.* also declined to act; this also appearing to the judge on petition, and by the endorsement of *J. S.* on the writ, on the 22d September, 1846, the judge appointed *Thomas L. F. Higgins* as elisor.

On the 28th September, 1846, a writ of possession was sued out, commanding the last named elisor " to cause the said *R. I.* to have possession of the said tracts of land, *The Addition to Ray's Adventure, Owens' Resurvey,* and *Resurvey on Moore's Delight,* except those parts of the two last mentioned tracts conveyed by *John Brewer* to *Caleb R. Penn* and wife, returnable to December term, 1845."

The elisor returned the writ as executed on the 10th October, 1846, describing the property delivered in its very terms.

At December term, 1846, the return term of the *hab. fac. pos.,* the appellants moved the court to quash it:

1. Because it was improvidently granted.

2. Because it was directed to an elisor without sufficient proof that the sheriff was incompetent to execute it.

And they also moved to quash the return of the same:

1. Because the return does not state that the lands as described in the writ had been delivered into the possession of the appellee, and the same were not delivered.

2. Because the said elisor actually turned the said parties out of the possession of property never sold by the sheriff, and to which the appellee never set up any claim; and it does not appear that he caused a survey to be made, or took any other steps to ascertain the tracts or parts of tracts therein mentioned.

The appellants prayed leave to take testimony on three days notice as usual, before a justice of the peace of *Montgomery* county, and to lay down by a surveyor such lands as may be necessary for the purpose of showing their rights, and the land, of the possession of which they have been deprived, and to which the appellee had no claim, and such lands as may be necessary for illustration; and that they may be reinstated in possession of the said lands, if the said writ and return shall be quashed,

or such part thereof as the appellee may appear to have no right to the possession of.

The court granted the prayer of the appellants, subject to all just exceptions, and also the' same privileges to the appellee, and required the appellant to file their proof and surveys by the 1st May, and the appellee to file his by the 1st June, 1847. Surveys were made, and a variety of affidavits taken and returned.

The motions to quash the writ of *hab. fac. pos.* and return, were argued before ARCHER, C. J., CHAMBERS, SPENCE, MA-GRUDER and MARTIN, J.

By MCLEAN and CARTER for the motion, and

By PALMER and BOWIE contra.

SPENCE, J., delivered the opinion of this court.

The legality of the sale made by the sheriff of *Montgomery* county, and certified in his return to the *venditioni* in this case, is not now an open question.

Objections were made in *Montgomery* county court to the sale, and the court after deliberation thereon passed the following order :—" The court upon due consideration of the proceedings aforesaid, with all things thereunto relating, order and adjudge that the motion for a *habere facias* be overruled, as to all the lands conveyed by *John Brewer* to *Caleb R. Penn* and wife: the court further order and adjudge that the writ of the *State of Maryland* of *habere facias possessionem,* issue for the residue of the lands sold as aforesaid." From this order of the county court, *William G. Penn* and *John Penn* appealed to the Court of Appeals, and at June term, 1846, this court affirmed the judgment of the county court.

It was insisted by the counsel of *Penn,* that the writ of *habere facias* should have been directed to *Henry Harding,* late sheriff of *Montgomery* county, who sold the land mentioned in the writ.

To this argument, the act of 1831, chap. 41, furnishes an answer, which in its first section, is as follows: " that in all

cases under the original act to which this is a supplement, it shall and may be lawful for any of the courts of this State, mentioned in said law, in case the sheriff, coroner or elisor shall die, resign, be removed from or disqualified for office, or have his authority otherwise terminated, after the sales mentioned in said law, and before the writ in the nature of a writ of *habere facias possessionem* shall have been issued and executed, to issue said writ in the nature of a writ of *habere facias possessionem*, to any succeeding sheriff, coroner or elisor, so that all the other provisions of said law are complied with and observed."

In this case, the term of office of the sheriff who made the sale had expired, and it was to prevent the writ being directed to his successor in office, that the application was made for the appointment for an elisor. The same reason does not exist in law, for confiding the execution of a writ of *habere facias possessionem*, to the sheriff who made the sale, as does for directing a *venditioni exponas* to the sheriff who levied the *fieri facias* ; in the former case, no property vests in the sheriff by the sale; in the latter case the law does clothe the sheriff with a qualified property by virtue of the levy made under the *fieri facias.* We therefore think there is no force in this objection.

The answer to the objection, that the writ of *habere facias possessionem* commands the elisor to deliver more land than was sold by the sheriff is, that the command of the writ pursues strictly the return of the sheriff, and the order of the Court of Appeals, and the return made by the elisor to the writ of *habere facias possessionem* certifies that he has delivered to *Isherwood*, the land named and described in the writ of *habere facias possessionem.*

It was insisted by the counsel for the motion, that the appointment of the elisor was not made according to the provisions of the acts of Assembly of 1794, ch. 54, sec. 5, and 1843, ch. 270, and therefore illegal.

The argument was that these acts require, that the judge should not be satisfied that the sheriff could not with safety be

trusted to execute the writ by the affidavit of the party himself, but that the affidavit must be made by a disinterested person, one who would be a legal and competent witness at common law. This construction of the words "satisfied by affidavit or otherwise," would not only be a construction which might be productive of great inconvenience, but frequently deprive parties of the benefits intended by those statutes. The design of the statutes was that the judge should be satisfied of the truth of the allegation, that the sheriff could not safely be trusted, and not to decide any matter of right.

The language in the act of 1794, ch. 54, sec. 5, is " and no such appointment shall be made by any judge or justice, unless he shall be satisfied by affidavit that the sheriff or coroner of the county cannot safely be trusted with the execution thereof." The words of the act of 1843, ch. 271, sec. 1, are " in any case where the said court or justice shall be satisfied by affidavit or otherwise."

It is our opinion that the practice of the courts of the State from 1773 to this time, settles the construction of these words. The act of 1773, ch. 7, sec. 7, provides, that the justices of the provincial court or any county court, upon application made to them in court by any party or parties in or to any action or civil suit depending or shall be depending before them, and upon satisfaction being given to such court, by affidavit or otherwise, that there are material and competent witnesses in such cause, residing or living out of this province, to direct the clerk of such court to issue commission, &c. If there has been any case, where any court in *Maryland* has refused to order a commission under this act, on the affidavit of the party, or any case in which the legality of such an order has been even questioned, it has escaped our attention: and we believe it is the universal practice in all the county courts of this State, to order such commissions to issue upon the affidavit of the parties, where no other objection is made, than the insufficiency of the affidavit of the party himself for such a purpose.

THE MOTION IN THIS CASE IS OVERRULED.